IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| RW DEVELOPMENT, LLC | § | PLAINTIFF |
| | § | |
| v. | § | Civil No. 1:12-cv-00224-HSO-RHW |
| | § | |
| CUNINGHAM GROUP | § | |
| ARCHITECTURE, INC. | § | DEFENDANT |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO ENFORCE ARBITRATION AGREEMENT AND DISMISS

BEFORE THE COURT is the Motion [12] to Enforce Arbitration Agreement and to Dismiss, or Alternatively, Stay Action, filed by Defendant, Cuningham Group Architecture, Inc. Plaintiff, RW Development, LLC, has filed a Response [14], and Defendant a Reply [18]. For the following reasons, Defendant's Motion [12] should be granted, and this case should be dismissed.

### I. BACKGROUND

A. Factual Background

On June 14, 2008, Plaintiff and Defendant entered into a written agreement for Defendant to provide architectural services for Plaintiff in connection with the design of a casino resort in Biloxi, Mississippi. Pl.'s Am. Compl. [1-3] at p. 2; Def.'s Answer [8] at p. 4. The Proposal and Agreement, drafted by Defendant in the form of a letter, is entitled, "PROPOSAL AND AGREEMENT FOR PROVIDING PROFESSIONAL SERVICES[,] Master Planning Design Services for Biloxi Casino Resort." Letter Agreement at p. 1, Ex. A to Pl.'s Am. Compl. [1-3]. This Proposal

and Agreement, executed on June 14, 2008, is hereinafter referred to as the "Letter Agreement." Pursuant to the Letter Agreement, Plaintiff agreed to compensate Defendant "on an hourly basis to an estimated initial upset maximum (IUM) amount of $100,000, in accordance with [Defendant's] standard billing rates, plus expenses." *Id.* at p. 2. The Letter Agreement provides that it "shall be interpreted and enforced under the laws of the State of Minnesota." *Id.* at p. 3.

In January 2010, Defendant initiated an arbitration proceeding against Plaintiff. Pl.'s Am. Compl. [1-3] at p. 3; Def.'s Answer [8] at p. 5; Def.'s Mem. [13] in Supp. of Mot. to Enforce Arbitration at p. 1. Defendant claims that Plaintiff has failed to pay Defendant in excess of $100,000.00 for its architectural services. Def.'s Mem. [13] in Supp. of Mot. to Enforce Arbitration at pp. 2-3. Defendant contends that the parties agreed to submit all disputes to arbitration, based upon the following language in the Letter Agreement:

> OTHER TERMS AND CONDITIONS
>
> Except as otherwise modified or limited herein, the terms and conditions of AIA Document B151, Abbreviated Standard Form of Agreement Between Owner and Architect (1997 edition - copy attached as Exhibit "B"), where RWD acts as Owner and CGA acts as Architect, shall apply to the services provided under this Proposal and Agreement.

Letter Agreement at p. 3, Ex. A to Pl.'s Am. Compl. [1-3]. AIA Document B151, referenced in this provision, contains an arbitration clause. AIA Document B151, Ex. B to Pl.'s Am. Compl. [1-3] at p. 10.

Defendant also maintains that this Court lacks jurisdiction to decide the

question of arbitrability, because AIA Document B151 provides that claims between the parties shall be decided in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. Def.'s Mot. [12] to Enforce Arbitration at p. 4. These Rules, in turn, provide:

> R-9. Jurisdiction
>
> (a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.
>
> . . . .

Construction Industry Arbitration Rules at p. 32, Ex. B [12-2] to Def.'s Mot. [12] to Enforce Arbitration.

Plaintiff opposes Defendant's Motion [12] to Enforce Arbitration and seeks a declaration that the parties' Letter Agreement does not require arbitration. Pl.'s Am. Compl. [1-3] at p. 5. Plaintiff contends that only a portion of AIA Document B151 is incorporated into the Letter Agreement, and that Article 7 of the Document, which contains the arbitration clause and adopts the Construction Industry Arbitration Rules, is not incorporated into the Letter Agreement. Pl.'s Resp. [14] to Def.'s Mot. to Enforce Arbitration at pp. 3-4.

Plaintiff further argues that it is not subject to the terms of the AIA Document B151, because it was not attached to the Letter Agreement when Plaintiff's President, Ray Wooldridge, signed the Agreement on Plaintiff's behalf. *Id.* at p. 3. It submits that Mr. Wooldridge "had no way of knowing what terms existed in the AIA Document before signing the Agreement." *Id.* Plaintiff has

3

submitted the affidavit of Mr. Wooldridge, wherein he states that "[he] would not have signed th[e] agreement if [he] believed that it required arbitration of disputes between the parties." Aff. of Ray Wooldridge [14-1], Ex. A to Pl.'s Resp. [14] to Def.'s Mot. to Enforce Arbitration. With its Reply, Defendant has submitted the affidavit of Nicole Vosika, the administrative assistant who assembled the Letter Agreement. Aff. of Nicole Vosika [18-1] at pp. 1-2, Ex. A to Def.'s Reply [18] in Supp. of Mot. to Enforce Arbitration. She attests that AIA Document B151 "was one of the most common AIA form agreements attached to letter agreements [that she] assembled," and that she has no reason to believe that she did not attach AIA Document B151 to the letter agreement transmitted to Plaintiff. *Id.* at p. 2. Defendant submits that, "despite the passage of four years since [Defendant] sent the letter agreement [to Wooldridge]," Plaintiff has never, prior to its August 2012 Response [14] in this case, contended that AIA Document B151 was not attached to the parties' Letter Agreement. Def.'s Reply [18] in Supp. of Mot. to Enforce Arbitration at pp. 1-2.

B.  Procedural History

An arbitration hearing was scheduled for July 17, 2012. Def.'s Mem. [13] in Supp. of Mot. to Enforce Arbitration at pp. 1-2; Pl.'s Resp. [14] to Def.'s Mot. to Enforce Arbitration at p. 4. Plaintiff filed a Complaint [1-2] on July 16, 2012, the day before the arbitration, and an Amended Complaint [1-3] on July 18, 2012, in the Chancery Court of Harrison County, Mississippi, seeking a declaration that the parties' Agreement does not require arbitration. Pl.'s Am. Compl. [1-3] at p. 5.

Four days after Plaintiff filed its initial Complaint in Chancery Court, Defendant removed the suit to this Court on the basis of diversity jurisdiction. Notice of Removal [1].

Plaintiff's counsel appeared at the arbitration hearing on July 17, 2012, objected to the arbitration, informed the arbitrator and Defendant of the pending declaratory action, and left the hearing. Pl.'s Resp. [14] to Def.'s Mot. to Enforce Arbitration at p. 4. The arbitrator conducted the hearing after Plaintiff's counsel's departure, and Defendant offered evidence in support of its claim. Def.'s Mem. [13] in Supp. of Mot. to Enforce Arbitration at p. 2; Pl.'s Resp. [14] to Def.'s Mot. to Enforce Arbitration at p. 4. According to Defendant, the arbitrator granted Plaintiff until July 24, 2012, to file a brief in support of its contention that the arbitrator lacked jurisdiction, and on July 24, 2012, Plaintiff informed the arbitrator that it would not file a brief. Def.'s Mem. [13] in Supp. of Mot. to Enforce Arbitration at p. 2. Defendant represents that the arbitrator has not yet rendered his decision. Def.'s Mem. [13] in Supp. of Mot. to Enforce Arbitration at p. 2.

Defendant argues that Plaintiff has waived any right it had to contest arbitration, pursuant to the Construction Industry Arbitration Rules, which provide that, "[a] party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection." Construction Industry Arbitration Rules [12-2] at p. 33. These Rules state that "[a] respondent may file an answering statement with the AAA within 14 calendar days after notice of the filing

of the demand is sent by the AAA." *Id.* at p. 29. "If no answering statement is filed within the stated time, respondent will be deemed to deny the claim." *Id.* Defendant, accordingly, maintains that the Court "should not restore RWD's right to contest" the arbitrator's jurisdiction, because Plaintiff "lost that right over two and half years ago." Def.'s Mem. [13] in Supp. of Mot. to Enforce Arbitration at p. 4. According to Defendant, Plaintiff "has entered numerous appearances in the arbitration proceeding [during] the two and a half years the proceeding has been underway," including filing a "'pre-hearing statement' memorandum prior to the first set arbitration hearing in which it argued the substantive merits of [Defendant's] claim." Def.'s Reply [18] in Supp. of Mot. to Enforce Arbitration at pp. 2-3.

## II. DISCUSSION

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *Howsman v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83 (2002)(internal citations omitted). "The '*question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Id.* (emphasis supplied)(citing *AT&T Techs., Inc. v. Commc'ns Workers,* 475 U.S. 643, 649 (1986)). Where an agreement expressly adopts the Construction Industry Arbitration Rules, which provide that "[t]he arbitrator shall have the power to rule on his or her jurisdiction," the express adoption of the Rules "presents clear and unmistakable evidence that the parties

6

agreed to arbitrate arbitrability." *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.,* 687 F.3d 671, 675 (5th Cir. 2012). The question for this Court, therefore, is whether the Letter Agreement between Plaintiff and Defendant expressly adopts the Construction Industry Arbitration Rules referenced in AIA Document B151. If it does, then this case should be dismissed because the arbitrator has jurisdiction to determine "any objections with respect to the existence, scope or validity of the arbitration agreement." Construction Industry Arbitration Rules at p. 32, Ex. B [12-2] to Def.'s Mot. [12] to Enforce Arbitration.

Under Minnesota law, the law governing the parties' Agreement, the determination of whether a contract is ambiguous is a legal question. *Current Tech. Concepts, Inc. v. Irie Enters., Inc.,* 530 N.W.2d 539, 543 (Minn. 1995). A court must give the contract language its plain and ordinary meaning. *Id.* "A contract is ambiguous if its language is reasonably susceptible of more than one interpretation." *Id.* "If a contract is ambiguous, it must be construed against its drafter." *Id.* Once a court determines that there is a valid arbitration clause, "any doubts regarding the scope of arbitrable issues must be resolved in favor of arbitration." *Churchhill Envtl. and Indus. Equity Partners, L.P. v. Ernst & Young, LLP,* 643 N.W.2d 333, 336 (Minn. App. 2002)(citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983)).

Plaintiff argues that the only portions of AIA Document B151 which are incorporated into the parties' Letter Agreement are those which address "services."

7

Pl.'s Resp. [14] to Def.'s Mot. to Enforce Arbitration at p. 3. According to Plaintiff, only Articles 2 and 3 of AIA Document B151 are part of the Letter Agreement:

> Where the Agreement references the AIA Document, it limits the AIA Document's application "to the *services* provided under this [Letter Agreement]." (Emphasis added). This language suggests that only articles 2 & 3 of the AIA Document, which address services, apply to the Agreement. Article 7 of the AIA Document does not address services, but calls for mediation and arbitration of disputes arising out of the AIA Document, which was not fully incorporated into and adopted by the Agreement. Therefore, incorporation of Article 7 of the AIA Document into the Agreement, and CGA's improper attempt to force arbitration of disputes arising out the Agreement is invalid and unenforceable.

*Id.*

Articles 2 and 3 of AIA Document B151, which Plaintiff concedes are incorporated into the parties' Agreement, are entitled "Scope of Architect's Basic Services," and "Additional Services," respectively. AIA Document B151 at pp. 2, 5, Ex. B to Pl.'s Am. Compl. [1-3]. These Articles are not the only Articles of AIA Document B151 that address services, as Plaintiff contends. AIA Document B151 contains twelve Articles, and all twelve expressly reference the architect's services.[1] *See* Article 1 at p. 2 ("The services performed by the Architect, Architect's employees and Architect's consultants shall be as enumerated in Articles 2, 3, and 12. . . . The services covered by this Agreement are subject to the time limitations contained in Section 11.5.1."); Article 4 at p. 8 ("The Owner shall provide prompt written notice

---

[1]For example, Articles 10 and 11 refer to Articles 2 and 3, which Plaintiff admits are incorporated into the parties' Agreement.

8

to the Architect if the Owner becomes aware of any fault or defect in the Project, including any errors, omissions or inconsistencies in the Architect's Instruments or Service"); Article 5 at p. 8 ("The Architect shall be entitled to compensation in accordance with this Agreement for all services performed whether or not the Construction Phase is commenced."); Article 6 at p. 9 (entitled "Use of Architect's Instruments of Service"); Article 7 at p. 9 ("If such matter relates to or is the subject of a lien arising out the Architect's services . . . ."); Article 8 at pp. 10-11 ("[T]he Architect shall be compensated for services performed prior to notice of such suspension."); Article 9 at p. 11 ("The Architect shall have the right to include photographic or artistic representations of the design of the Project among the Architect's promotional and professional materials."); Article 10 at p. 12 (addressing payments to the architect for "Basic Services" and "Additional Services"); Article 11 at p. 13 (addressing compensation for "Basic Services" and "Additional Services"); Article 12 at p. 14 (entitled "Other Conditions or Services").

The Letter Agreement signed by the parties provides that AIA Document B151 applies "to the services provided under this Proposal and Agreement." Plaintiff hired Defendant to perform "services," and AIA Document B151 applies to those "services," "[e]xcept as otherwise modified or limited" in the Letter Agreement. Letter Agreement at p. 3, Ex. A to Pl.'s Am. Compl. [1-3]. Plaintiff's contention that only Articles 2 and 3 of AIA Document B151 are part of the parties' Letter Agreement is not a reasonable interpretation. Applying Minnesota law, it seems clear that the plain and ordinary meaning of the Letter Agreement is that all

Articles of AIA Document B151 are incorporated. Article 7 of AIA Document B151 applies and requires the parties to arbitrate "arbitrability." AIA Document B151, Ex. B to Pl.'s Am. Compl. [1-3] at p. 10; Construction Industry Arbitration Rules [12-2] at p. 32. Therefore, this case should be dismissed because the arbitrator, and not this Court, "ha[s] the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Construction Industry Arbitration Rules [12-2] at p. 32; *see Petrofac,* 687 F.3d at 675.

Plaintiff's contention that AIA Document B151 was not attached when Plaintiff's President, Ray Wooldridge, signed the Letter Agreement, such that Mr. Wooldridge "had no way of knowing what terms existed in the AIA Document before signing the Agreement," does not alter this analysis. The parties' Letter Agreement expressly references AIA Document B151 within its text, under the heading, "Other Terms and Condition," and it also lists AIA Document B151 as an attachment. Letter Agreement at p. 4, Ex. A to Pl.'s Am. Compl. [1-3]. The Letter Agreement was sent to Plaintiff on May 13, 2008, and signed by Plaintiff and Defendant June 14, 2008. *Id.* at pp. 1, 4. Plaintiff had ample time prior to executing the Letter Agreement to request AIA Document B151 if it was not attached. Furthermore, AIA Document B151 is a standard form contract drafted by the American Institute of Architects, and is readily accessible on the internet.[2]

---

[2]AIA Document B151™-1997 (December 3, 2012), http://www.aia.org.

Despite Plaintiff's alleged unfamiliarity with AIA Document B151, Plaintiff is bound by its terms. "In the absence of fraud or misrepresentation, a person who signs a contract may not avoid it on the ground that he did not read it or thought its terms to be different." *Garnter v. Eikill,* 319 N.W.2d 397, 398 (Minn. 1982). "People who sign documents which are plainly written must expect to be liable thereon. Otherwise written documents would be entirely worthless and chaos would prevail in our business relations." *Watkins Prod., Inc. v. Butterfield,* 144 N.W.2d 56, 58 (Minn. 1966). Whether Plaintiff has waived its right to contest arbitrability is a question for the arbitrator. *Howsam,* 537 U.S. at 84 (presumption that arbitrator should decide "allegation[s] of waiver, delay or a like defense to arbitrability")(citing *Moses H. Cone,* 460 U.S. at 24-25).

Based on the foregoing, all of the issues raised in this suit must be submitted to arbitration. As such, this case should be dismissed, rather than stayed. The arbitrator has jurisdiction to decide "any objections with respect to the existence, scope or validity of the arbitration agreement." Construction Industry Arbitration Rules [12-2] at p. 32. Because the arbitrator could determine that the parties' dispute is not subject to arbitration, this case will be dismissed without prejudice.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion [12] to Enforce Arbitration Agreement and to Dismiss, should be granted, and this case should be dismissed without prejudice. The arbitrator has the power to rule on the existence, scope, or validity of the parties' arbitration agreement, and the parties are to submit the

issues raised in this suit to arbitration.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion [12] to Enforce Arbitration Agreement and to Dismiss, or Alternatively, Stay Action, filed by Defendant, Cuningham Group Architecture, Inc., is **GRANTED**. The parties are to submit the issues raised in this suit to arbitration.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, this case is hereby **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 5th day of December, 2012.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE